IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No.  06-cv-01178-ZLW-BNB

NEWMONT U.S.A. LIMITED, f/k/a NEWMONT MINING
CORPORATION, and
N.I. LIMITED,

    Plaintiffs and Counterclaim Defendants,

v.

INSURANCE COMPANY OF NORTH AMERICA,

    Defendant and Counterclaimant.

---

ORDER

---

    The matters before the Court are (1) Defendant And Counterclaimant's Motion To Stay And Compel Arbitration, and (2) Plaintiffs' Cross Motion For Determination Of Court's Authority To Adjudicate Plaintiffs' Claims And To Stay Arbitration.  An expedited hearing on the present motions was conducted on July 25, 2006, after which the Court allowed the parties to file supplemental briefs.  The Court has considered fully the arguments and legal authority presented by the parties at the expedited hearing and in their papers, and determines that a further hearing is not necessary.

**I.**     **Background**

The parties appear to agree on the following facts. Defendant Insurance Company of North America (INA or Defendant) issued comprehensive general liability insurance (CGL) policies to Plaintiff Newmont U.S.A. Limited, f/k/a Newmont Mining Corporation (Newmont), the parent corporation of Plaintiff N.I. Limited (NIL) (collectively, Plaintiffs) for claims asserted against Newmont and certain of its subsidiaries or affiliates, including the Idarado Mining Company (Idarado) and the Resurrection Mining Company (Resurrection). NIL entered into three successive reinsurance agreements with INA (Reinsurance Agreements) under which NIL agreed to reinsure INA with respect to the primary CGL policy that INA had issued to Newmont (the INA Policy). The last effective date of the last of the Reinsurance Agreements was July 18, 1985. Article X of the Reinsurance Agreements states that "any dispute arising out of this agreement" shall be arbitrated.

In the early 1980's, the state of Colorado asserted environmental impairment claims against Idarado and Resurrection regarding mine sites in Colorado. Newmont thereafter sought indemnity and defense coverage for those claims from INA and others in a declaratory judgment action filed in state court (the CGL Litigation or Declaratory Judgment Action). In November 1997, Newmont and INA entered into a Partial Settlement Agreement and Release of the CGL Litigation claims (1997 Settlement Agreement). The Recitals section of the 1997 Settlement Agreement states that "this settlement resolves all claims of Newmont for insurance coverage for Idarado Environmental Claims" under the policies issued by INA and others, that the parties

2

intend to settle "their disputes concerning the alleged application of the Policies to the Idarado Environmental Claims . . . but not the Resurrection Environmental Claims," and that "this settlement resolves only Newmont's claims arising from the Idarado mining site and does not settle or resolve Newmont's, or any other entity's, claims arising from the Resurrection mining site or any other site."  The 1997 Settlement Agreement also includes the following release:

> 4.  **Release of N.I. Limited**. . . . In consideration of [certain payments], INA . . . release[s] N.I. Limited from all claims, or causes of action of any kind, nature or description, arising from or relating to the Declaratory Judgment Action or relating to claims asserted or which could have been asserted therein, including, without limitation, any claims for INA's legal fees or costs of defense, claims based on this settlement, or otherwise, which claims arise from any insurance or reinsurance contract of N.I. Limited.  The foregoing to the contrary notwithstanding, this release shall not apply to (i) claims by INA against N.I. Limited for reinsurance coverage for sums paid to Newmont, which claims are based on alleged occurrences at the California Gulch Mining Site[1] or any other site other than the Idarado Mining Site . . . .

Then, in January 2002, Newmont and INA entered into a Settlement Agreement and Release (2002 Settlement Agreement) which settled claims not previously settled in the 1997 Settlement Agreement.  The Recitals section of the 2002 Agreement states that "this settlement resolves all claims of Newmont for insurance coverage for Resurrection Environmental Claims," and that the parties "intend hereby to compromise, settle and

---

[1] The California Gulch Mining Site was the site involved in the claims against Resurrection.

finally resolve their disputes concerning the alleged application of the Policies to the Resurrection Environmental Claims." The 2002 Settlement Agreement also includes the following release:

> 4. **Release of N.I Limited**. . . . In consideration of [certain payments], INA . . . release[s] N.I. Limited . . . from all claims, or causes of action of any kind, nature or description, arising from or relating to the Declaratory Judgment Action or relating to claims asserted or which could have been asserted therein, including, without limitation, any claims for INA's legal fees or costs of defense, claims based on this settlement, claims paid to third parties, Allocated Claims Expenses, or any other claims, which arise in any way or for any reason from any insurance or reinsurance contract, policy or other undertaking of N.I. Limited.
>
> The foregoing to the contrary notwithstanding, this release shall not apply to (i) claims by INA against N.I. Limited for reinsurance coverage for sums paid to Newmont, on account of alleged occurrences at any site other than the California Gulch Mining Site or the Idarado Mining Site . . . .

Neither the 1997 nor the 2002 Settlement Agreement contains an arbitration provision, but both contain a merger clause. Both agreements state that they are to be construed under Colorado law.

In January 2003, BHP Copper, Inc. (BHP), a former subsidiary of Newmont in which Newmont no longer had any interest, filed a state court action against INA (the BHP Litigation) seeking a declaration of coverage as a named insured under the INA Policy concerning BHP's Pinal Creek Site in Arizona (the Pinal Creek Site). In September 2002, INA drew upon a letter of credit from NIL to reimburse itself for over

4

$439,000 in costs that it had allegedly incurred defending the BHP Litigation, which INA claimed were due under the Reinsurance Agreements.  In July 2005, INA asserted a further claim under the Reinsurance Agreements for over $517,000 in further costs it allegedly incurred defending and settling the BHP Litigation.

In August 2005, Plaintiffs demanded that INA return the funds drawn from the letter of credit, asserting that the 1997 and 2002 Settlement Agreements had released NIL from any reinsurance obligations for the BHP Litigation.  INA refused to return the funds, contending that the releases in the 1997 and 2002 Settlement Agreements did not cover claims concerning the Pinal Creek Site.  On May 15, 2006, INA demanded arbitration under Article X of the Reinsurance Agreements, seeking to recover the funds.  On May 31, 2006, Plaintiffs filed the present action in state court seeking a declaration that the 1997 and 2002 Settlement Agreements released NIL from any reinsurance liability associated with the Pinal Creek Site, for injunctive relief to prevent INA from proceeding against NIL in arbitration, and for money damages arising from what Plaintiffs claim is NIL's breach of the Settlement Agreements and its failure to abide by the releases contained therein.  INA removed the action to this Court on June 20, 2006.  Defendant thereafter filed the present motion to stay the action and compel arbitration, and Plaintiffs filed the present cross-motion to stay the  arbitration.

**II.     Analysis**

As the Court of Appeals for the Tenth Circuit made clear in Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.,[2] where, as here, there is no clear and unmistakable evidence that the parties intended an arbitrator to determine the enforceability and scope of an arbitration agreement, the enforceability and scope of the arbitration agreement are for the court, not the arbitrator, to decide.[3]  In Riley, the parties entered into a Manufacturing Agreement containing an arbitration clause.  After the Manufacturing Agreement had expired by its own terms, the plaintiff threatened a copyright suit against the defendant.  The parties then executed a settlement agreement resolving that dispute.  The settlement agreement contained mutual releases and a merger clause but did not contain an arbitration provision.  Eight months later, the plaintiff filed a federal action against the defendant asserting new copyright, breach of contract, and other claims.  The defendant responded by asserting that the claims must go to arbitration pursuant to the arbitration clause in the Manufacturing Agreement.  The district court found that the releases in the settlement agreement released any obligation in the Manufacturing Agreement to submit the claims to arbitration, and that the settlement agreement's merger clause buttressed that conclusion.[4]

---

[2] 157 F.3d 775 (10th Cir. 1998).

[3] See id. at 778-780.

[4] Id. at 779.

On appeal, the Tenth Circuit, citing to Nolde Bros., Inc. v. Local No. 358,[5] found that unless the parties expressed or clearly implied an intent to revoke the arbitration clause, the agreement to arbitrate survived the expiration of the Manufacturing Agreement.[6] "With that understanding in mind," the court of appeals then "turn[ed] to the evidence that Riley and the district court found demonstrates an intent to revoke the arbitration clause in the Manufacturing Agreement"[7]: (1) the mutual releases and (2) the merger clause in the settlement agreement.  The Tenth Circuit carefully analyzed the language of the releases to determine which of the plaintiff's duties under the Manufacturing Agreement had been released and which had not.  The court reasoned that, if all of the plaintiff's duties under the Manufacturing Agreement had been released, then the plaintiff's claims could not fall under the Manufacturing Agreement and therefore would not be arbitrable.[8]  The court determined that only five discrete types of claims had been released by the releases in the settlement agreement, and that the defendant thus had waived its right to demand arbitration under the Manufacturing Agreement only as to those five types of claims.[9]  The court concluded that the defendant "retains a limited right to demand arbitration on those claims in [the

---

[5] 430 U.S. 243, 254-55 (1977).

[6] See Riley, 157 F.3d at 781.

[7] Id.

[8] See id. at 782.

[9] See id.

7

plaintiff's] federal lawsuit that arise under the Manufacturing Agreement but which are not addressed in the Settlement Agreement."[10]

Thus, under the Tenth Circuit's analysis in Riley, the Court must determine (1) whether, pursuant to the language of the arbitration clause, Defendant's claims against NIL concerning coverage for the Pinal Creek Site constitute a "dispute arising out of" the Reinsurance Agreements, and, if they do, (2) whether those claims were released in the 1997 and 2002 Settlement Agreements, keeping in mind that the arbitration clause in the Reinsurance Agreements is revoked only if there is evidence that the parties expressed or clearly implied an intent to do so. Riley instructs that in conducting this review, the Court "must bear in mind the rule that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[11]

As to the first question, the parties' dispute as to whether NIL must provide reinsurance coverage for the Pinal Creek Site under the Reinsurance Agreements without doubt constitutes a "dispute arising out of" the Reinsurance Agreements. In order to answer the second question, the Court must construe the language of the 1997 and 2002 Settlement Agreements. "[T]he primary rule of construction of releases is that the intention of the parties must govern, and that they are to be construed by the

---

[10] Id. at 784.

[11] Id. at 785 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

same rules of arriving at the intention of the parties as any other kind of contracts."[12] "The intention of the parties as determined by the court shall rest on good sense and plain understanding of the words used and acts directed to be performed."[13] The Court must consider "the subject matter [of the contract], the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby."[14] Applying these principles, the Court finds that the 1997 and 2002 Settlement Agreements do not release NIL from liability to INA for reinsurance regarding the BHP Litigation and the Pinal Creek Site. The parties made clear in the recitals to the 1997 and 2002 Settlement Agreements that those agreements were intended to resolve claims pertaining to the Idarado and Resurrection sites only. Moreover, the specific language of the releases expressly states that the claims released were limited to those claims "arising from or relating to the Declaratory Judgment Action," *including* the subset types of claims listed, such as claims paid to third parties. In other words, as Defendant argues, the subset claims are released only if they themselves arise from or relate to the Declaratory Judgment Action. Claims concerning coverage for the BHP Litigation and Pinal Creek Site do not arise from or relate to the Declaratory Judgment action, and therefore were not released.

---

[12] 76 C.J.S. *Release* § 44 (2005); see also Neves v. Potter, 769 P.2d 1047, 1053 (Colo. 1989).

[13] Neves, 769 P.2d at 1053.

[14] Lorenzen v. Mustard's Last Stand, Inc., 586 P.2d 12, 14 (Colo. 1978).

The language excepting from the releases any claims for reinsurance coverage for sums paid to Newmont for claims other than those pertaining to the Idarado and Resurrection sites does not alter the conclusion that the present claims are not released, and in fact further expresses the parties' intent that the agreements and releases were intended to address the Idarado and Resurrection sites only.

As to the merger clauses in the 1997 and 2002 Settlement Agreements, Plaintiff does not contend, and the Court does not find, that the merger clauses extinguished the arbitration clauses.[15]

Finally, because Newmont was not a party to the Reinsurance Agreements, it cannot be compelled to arbitrate.[16] Indeed, INA commenced arbitration against NIL only, not against Newmont. However, a stay of the entire action nonetheless is warranted given the nature of Newmont's claims. The Court declines to address Defendant's request that Newmont be dismissed from this action since it was not made in a separate motion pursuant to D.C. COLO.LCivR 7.1C.

## III. Order

Accordingly, it is

ORDERED that Defendant And Counterclaimant's Motion To Stay And Compel Arbitration (Doc. No. 5) is granted. It is

---

[15] See Plaintiff's Reply at 3 n.3.

[16] See AT&T Technologies, inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986).

FURTHER ORDERED that Plaintiffs' Cross Motion For Determination Of Court's Authority To Adjudicate Plaintiffs' Claims And To Stay Arbitration (Doc. No. 12) is denied.  It is

FURTHER ORDERED that this action is stayed pending the completion of arbitration.  It is

FURTHER ORDERED that on or before December 1, 2006, the parties shall file a joint status report informing the Court of the status of arbitration.

DATED at Denver, Colorado, this __20__ day of September, 2006.

BY THE COURT:

_____
ZITA L. WEINSHIENK,  Senior Judge
United States District Court