EXHIBIT

A-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01178-ZLW-BNB

NEWMONT U.S.A. LIMITED, f/k/a NEWMONT MINING CORPORATION, and
N.I. LIMITED,

      Plaintiffs and Counterclaim Defendants,

v.

INSURANCE COMPANY OF NORTH AMERICA,

      Defendant and Counterclaimant.

---

## DECLARATION OF MATTHEW J. LASKY, ESQ.

---

      I, **Matthew J. Lasky, Esq.**, declare:

      1.     I am associated with the law firm of Mound Cotton Wollan & Greengrass, attorneys for Defendant and Counterclaimant Insurance Company of North America ("INA"). I submit this declaration for the purpose of placing before this Court certain documents to support INA's Motion to Confirm Arbitration Award And Enter Judgment, and in opposition to Plaintiffs' Motion for Entry of Judgment.

      2.     INA and Plaintiff and Counterclaim Defendant, N.I., Limited ("NIL") entered into three consecutive reinsurance agreements, the first of which incepted on July 18, 1982 (the "Reinsurance Agreements"). True and accurate copies of the Reinsurance Agreements are annexed hereto as Exhibit "1."

3.      On December 21, 2007, the arbitration panel rendered a unanimous decision in favor of INA. A true and accurate copy of the panel's Final Award is annexed hereto as Exhibit "2."

4.      In accordance with paragraph 5 of the panel's Final Award, on January 18, 2008, INA served (via overnight Federal Express) an account in affidavit form evidencing that as of January 18, 2008 NIL owes INA $1,277,376.70. A true and accurate copy of this account is annexed hereto as Exhibit "3."

5.      NIL questioned the attorneys' fees and costs set forth in INA's account. On January 24, 2008, INA sent NIL and the panel additional back-up information in connection with attorneys' fees and costs. A true and accurate copy of this back-up information is annexed hereto as Exhibit "4."

6.      On January 28, 2008, the panel ordered that INA had submitted "a sufficiently detailed account" and that NIL should "pay the amount awarded in accordance with the Panel's Final Award[.]" A true and accurate copy of the panel's January 28, 2008 order is annexed hereto as Exhibit "5."

7.      In various phone conversations between counsel, NIL thereafter took the position that INA is not entitled to the contractual rate of interest or any attorneys' fees and costs that have been (or will be) incurred after January 18, 2008 -- even though INA believed that it was awarded these amounts in the Final Award.

8.      On March 5, 2008, INA submitted to the Court its proposed judgment, which is in accordance with the Final Award. A true and accurate copy of the INA' proposed judgment is annexed hereto as Exhibit "6."

9.     That same day, NIL filed its "Submission Of Proposed Order For Final Judgment." A true and accurate copy of NIL's "Submission Of Proposed Order For Final Judgment" is annexed hereto as Exhibit "7."

10.     On March 28, 2008, INA asked the panel for a clarification of the Final Award to dispose of NIL's unfounded contentions regarding post-January 18, 2008 interest, attorney's fees and costs. A true and accurate copy of INA's March 28, 2008 submission to the panel is annexed hereto as Exhibit "8."

11.     On April 10, 2008, NIL opposed INA's request for a clarification. A true and accurate copy of NIL's April 10, 2008 submission to the panel is annexed hereto as Exhibit "9."

12.     On April 14, 2008, INA submitted a reply to the panel. A true and accurate copy of INA's April 14, 2008 reply is annexed hereto as Exhibit "10."

13.     The parties also submitted additional responses in connection with INA's request for a clarification. True and accurate copies of these e-mail submissions are annexed hereto as Exhibit "11."

14.     On April 15, 2008, the panel issued a clarification of its Final Award reiterating that INA is entitled to the contractual rate of interest and any attorneys' fees and costs that have been (or will be) incurred after January 18, 2008, including post-judgment. A true and accurate copy of the Panel's April 15, 2008 clarification order is annexed hereto as Exhibit "12."

WHEREFORE, it is respectfully requested that INA's Motion to Confirm Arbitration Award And Enter Judgment on same be granted in its entirety.  Further, NIL's Motion for Entry of Judgment should be denied.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 22, 2008.

_____
MATTHEW J. LASKY


Sworn to before me on this
22nd day of April, 2008

_____
Notary Public

**VIVIANA SERRANO**
**Notary Public, State of New York**
No. 01SE6092363
Qualified in Bronx County
**Commission Expires May 19, 20_10_**

**EXHIBIT**

**1**

## REINSURANCE AGREEMENT

This Reinsurance Agreement, effective the ___EIGHTEENTH___ day of ___JULY___, 19_82_ between XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX THE INSURANCE COMPANY OF NORTH AMERICA, ___PENNSYLVANIA___ corporation, (which corporation is or all of which corporations are hereinafter called the "Company") and ___N. L. LTD.___ _____, a ___BERMUDA___ corporation, having its office and principal place of business at ___C/O J&H LTD.,___ ___HAMILTON 5, BERMUDA___ (hereinafter called the "Reinsurer"). 30 CEDAR AVENUE

In consideration of the payment of the reinsurance premium, and subject to the terms, conditions and limits of liability set forth below, the Reinsurer does hereby reinsure the Company in respect of the Company's Policy.

If the Company is constituted of more than one corporation, whose names are set forth above, this Agreement shall apply severally as between the Reinsurer and each such corporation with respect to the policy or policies issued by each such corporation. The rights and obligations provided for herein of any one corporation constituting the Company will not be held, assumed or guaranteed by any other corporation constituting the Company.

### ARTICLE I

For purposes of this Agreement, the following terms shall have these meanings:

1. "Policy"—Company Policy(ies) number(s) ___SCG GO 209325, SCA 5875___ and any extension or renewal thereof and endorsement thereto (if more than one policy number is inserted the term "Policy" will mean any one or more of the policies whose numbers are inserted, depending upon the context of its usage).

2. "Incurred Losses"—All Paid Losses, plus case reserves for unpaid losses under the Policy as estimated by the Company.

3. "Paid Losses"—Claims under the Policy paid by the Company; plus all Allocated Claims Expense paid by the Company in connection with the Policy, whether or not related to claims paid.

4. "Allocated Claims Expense"—Such claims expenses that the Company, under its accounting practices, directly allocates to a particular claim. Such expenses include, but are not limited to, attorney's fees for claims in suit, court costs and related costs such as filing fees, and the costs of medical examination, expert medical or other testimony, laboratory services and x-rays, autopsies, stenographic services, witnesses and summonses and copies of documents; but shall not include the salaries and traveling expenses of the Company's employees, the Company's overhead and adjusters' fees.

5. "Occurrence" and "Completed Operations Hazard" and "Products Hazard" will have the meanings given to them in the Policy.

### ARTICLE II

The Reinsurer will be liable to the Company under this Agreement for the following:

1. for each occurrence involving Incurred Losses arising out of the Products Hazard: up to and including $150,000. of such Incurred Losses, plus all related Allocated Claims Expense;

2. for each occurrence involving Incurred Losses arising out of Statutory No-Fault Liability: up to and including $150,000. of such Incurred Losses, plus all related Allocated Claims Expense;

3. for each occurrence, not arising out of Statutory No-Fault Liability or Products Hazards: up to and including the first $150,000. of such Incurred Losses, plus all related Allocated Claims Expense;

4. for Unallocated Claims Expense in the amount of $ 115. _____ for each automobile claim submitted under the Policy in excess of _____ 15 _____ claims; and in the amount of $ 210. _____ for each general liability claim submitted under the Policy in excess of _____ 10 _____ claims.

## ARTICLE III

1. While the Reinsurer does not undertake to investigate or defend claims or suits under the policy, it shall, where permitted by law, have the right and opportunity to associate, at its own expense, with the Company and its representatives in the defense of any claim, suit or proceeding involving this reinsurance. Except as otherwise specifically provided for herein, the Reinsurer's liability shall follow that of the Company under the Policy. All settlements by the Company of claims involving this reinsurance, when made by the Company, shall be unconditionally binding on the Reinsurer.

2. The Company shall, at the request of the Reinsurer, furnish the Reinsurer a copy of the Policy and all endorsements thereto which in any manner affect this Agreement and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

3. The Company will pay or credit the Reinsurer up to the amount of the Reinsurer's interest for amounts attributable to salvage, reimbursement obtained or recovery made by the Company relating to the Policy, after deducting the actual cost (excluding Company salaries and office expenses) of obtaining such salvage or reimbursement or making such recovery, and after the Company has been reimbursed up to the amount of its interest.

## ARTICLE IV

Except as otherwise provided in ARTICLE VI, any payment the Reinsurer is required to make or any funds the Reinsurer is required to provide under the terms of this Agreement will be payable in the currency of the United States of America and will be paid or provided within ten (10) days from the date the Company sends to the Reinsurer a request for any such payment or funds.

## ARTICLE V

1. The Company will, with funds to be provided by the Reinsurer, establish and maintain a Paid Loss Deposit Fund, the purpose of which is to provide a source of funds for payment of Reinsurer's liability under this Agreement. The initially required level of the Paid Loss Deposit Fund shall be $ 5,000. _____ The Company will have the right to adjust the required level of the Paid Loss Deposit Fund six (6) months after the effective date of this Agreement and quarterly thereafter. The adjusted required level of the Paid Loss Deposit Fund will be a sum which is not greater than the amount of the total Paid Losses for the preceding three (3) months.

2. If, during any calendar month following the effective date of this Agreement, the Company becomes obligated to pay amounts representing the Reinsurer's liability under this Agreement that exceed the then-current initially required or adjusted required level of the Paid Loss Deposit Fund, the Reinsurer shall, within ten (10) calendar days after receipt of a written demand by the Company, forward funds to the Company sufficient to cover such amounts greater than the Paid Loss Deposit Fund balance. The Reinsurer will be credited for the forwarding of such funds (less any interest paid) in a subsequent Reconciliation Statement.

3. If the Reinsurer fails to make any payment to the Company within the time required by this Agreement, the Company will have the option to change the foregoing formula for adjusting the required level of the Paid Loss Deposit Fund by increasing that level to a sum which is not greater than the amount of the total Paid Losses for the preceding semi-annual period.

## ARTICLE VI

1. The consideration for the reinsurance provided hereunder will be a reinsurance premium which shall be the premium received by the Company under the Policy less return premium minus:

   a. _____ 10.78 _____ % of such premium for Company expenses (excluding retrospective adjustments);

   b. _____ 4.14 _____ % of such premium for estimated: (i) premium taxes, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

   c. _____ 20.77 _____ % of such premium for Company's insurance charge (excluding retrospective adjustments).

2. As the premium is received by the Company in accordance with the terms and conditions of the Policy, reinsurance premium shall be payable to the Reinsurer within the time specified in ARTICLE VII below. The amounts owed by the parties to each other shall be reconciled as provided in paragraph 3 immediately below.

3. The reinsurance premium payable to the Reinsurer shall be reconciled against the following items to the extent that such items were not previously reconciled under this Agreement:

   a. the amount of the initially required level of the Paid Loss Deposit Fund;

   b. the amount necessary to establish or maintain the adjusted required level of the Paid Loss Deposit Fund; and

   c. that portion of the Reinsurer's liability under ARTICLE II of this Agreement represented by Paid Losses and unallocated claims expense.

## ARTICLE VII

1. Within ten (10) days after each payment of premium is received by the Company in accordance with the terms and conditions of the Policy, the Company will issue to the Reinsurer a Reconciliation Statement reflecting items a, b, and c described in ARTICLE VI, 3 above. If the result of any such reconciliation is that the Reinsurer owes money to the Company, the Reinsurer will pay the amount so owed within the time required by this Agreement. If the result of any such reconciliation is that the Company owes money to the Reinsurer, the Company will pay the amount so owed at the time the Reconciliation Statement is issued.

2. The parties hereto recognize and agree that the Reinsurer's liability hereunder will probably extend beyond the time that the Company is receiving premiums under the Policy, and possibly beyond the expiration date of the Policy and this Agreement; and that in such an event the reconciliations may involve only a computation of the Reinsurer's liability to the Company, if any.

3. Upon termination of the Policy, the earned premium will be computed in accordance with the applicable rules, rates, rating plans, premiums and minimum premiums, and the actual taxes payable by the Company will be established. If the earned premium as finally determined is different from the premium that was utilized to establish the reinsurance premium hereunder, or if the actual taxes payable by the Company is different from the estimated taxes used to establish the reinsurance premium hereunder, all prior reconciliations will be recalculated utilizing the actual earned premium or the actual taxes. If the recalculation of the reconciliations indicates that the Reinsurer owes money to the Company, the Reinsurer will pay that money within the time required by this Agreement; if the recalculation indicates that the Company owes money to the Reinsurer, the Company will pay that money at the time the recalculation of the prior reconciliation is mailed to the Reinsurer.

## ARTICLE VIII

The Reinsurer shall provide to the Company either an Irrevocable Letter of Credit or other collateral acceptable to the Company in an amount and form acceptable to the Company, for the purpose of securing the obligations of the Reinsurer hereunder. The obligations shall include but not be limited to, actual reserves for losses, unearned premiums and reserves for losses incurred but not reported. The Reinsurer's duty to provide security as aforesaid will extend until the Company is satisfied that the Reinsurer's obligations under this Agreement have been or will be met. The Reinsurer recognizes that this duty may continue after this Agreement terminates or is cancelled.

The Reinsurer will, thirty (30) days prior to any termination or expiration of such Irrevocable Letter of Credit or other collateral, provide to the Company, a substitute Irrevocable Letter of Credit or substitute collateral acceptable to the Company in an amount and form acceptable to the Company which will become effective immediately upon the termination or expiration of the prior Irrevocable Letter of Credit or other collateral. The Reinsurer will likewise continue to provide such substitute Irrevocable Letters of Credit or other collateral acceptable to the Company in an amount and form acceptable to the Company until the Company is satisfied that the Reinsurer's obligations under this Agreement have been or will be met. If the Reinsurer fails to provide the Company with any such substitute Irrevocable Letter of Credit or other collateral the Company will have the right to draw upon the full amount of the existing Irrevocable Letter of Credit or to condemn the existing collateral and to apply such funds to secure the obligations of the Reinsurer hereunder.

The Company will have the right to require that any such substitute Irrevocable Letter of Credit or other collateral be in an amount greater than that of the Irrevocable Letter of Credit or other collateral it is replacing. Reinsurer shall deliver all collateral or replacement collateral to Company at   127 JOHN ST., NEW YORK, N.Y.

ARTICLE IX

1. The Company will be liable for all taxes on premiums received under the Policy.

2. The Reinsurer will, in addition to its liability under ARTICLE II, be liable for all taxes on reinsurance premiums hereunder.

ARTICLE X

1. As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two (2) arbitrators and an umpire, meeting in Philadelphia, Pennsylvania, unless otherwise agreed by the Company and the Reinsurer.

2. The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies. Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within sixty (60) days after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four (4) weeks after their nominations, each of them shall name three (3), of whom the other shall decline two (2) and the decision shall be made by drawing lots.

3. The claimant shall submit its initial brief within twenty (20) days from appointment of the umpire. The respondent shall submit its brief within twenty (20) days thereafter and the claimant may submit a reply brief within ten (10) days after filing of the respondent's brief.

4. The board shall make an award with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its award in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. The board shall make its award within sixty (60) days following the termination of the hearings unless the parties consent to an extension. A decision by the majority of the members of the board shall become the award of the board and shall be final and binding upon all parties to the proceeding. Either party may apply to the United States District Court for the Eastern District of Pennsylvania for an order confirming the award; and a judgment of that Court shall thereupon be entered upon the award. If such an order is issued, the attorneys' fees of the party so applying and court costs will be paid by the party against whom confirmation is sought.

5. If more than one (1) reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one (1) party for purposes of this clause and communications shall be made by Company to each of the reinsurers constituting the one (1) party; provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint.

6. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board.

ARTICLE XI

1. This Agreement may be cancelled in whole or in part by the Company by giving ninety (90) days prior written notice to the Reinsurer. The Reinsurer shall have the right to cancel this Agreement by giving a number of days prior written notice to the Company which shall be not less than thirty (30) more than the longest prior notice of cancellation required by any Named Insured or Insured under the Policy.

2. In the event the Policy is cancelled, this Agreement shall automatically be cancelled as of the effective date of the cancellation of the Policy.

3. In either such event the Reinsurer will be paid a pro rata portion of the reinsurance premium to which it would have been entitled had this Agreement not been cancelled.

ARTICLE XII

Reinsurer recognizes that the Company's obligations which accrue during the term of the Policy will survive the termination of the Policy; and the Reinsurer's obligations under this Agreement will correspondingly survive the termination of the Policy and the termination of this Agreement. If this Agreement terminates, the Reinsurer's liability under ARTICLE II hereof will continue with respect to losses incurred prior to the effective date of termination of this Agreement, and the Reinsurer will pay the Company for Paid Losses and unallocated claims expense until there are no more Incurred Losses outstanding.

ARTICLE XIII

Reinsurer will, in addition to its liability under ARTICLE II, reimburse Company for Company's attorneys' fees and court costs incurred in attempting to collect amounts, including interest, which become owing to Company hereunder, whether prior or subsequent to the termination of the Policy, but which are not paid within the time required by this Agreement. Either party will pay to the other an interest charge at the monthly rate of one and one-half percent (1.5%) on any amount that is not paid within the time required by this Agreement, said charge to commence at the time any such payment is required by this Agreement.

ARTICLE XIV

Inadvertent delays, errors or omissions made by Company or Reinsurer in connection with this Agreement or any transaction hereunder shall not relieve the other party from any liability which would have attached, had such delay, error or omission not occurred, provided that such error or omission will be rectified as soon as possible after discovery.

ARTICLE XV

The Reinsurer hereby agrees that, as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, the reinsurance shall be payable by the Reinsurer on the basis of the liability of Company under the Policy without diminution because of the insolvency of Company.

It is further agreed and understood that in the event of insolvency of Company, the liquidator or receiver or statutory successor of Company shall give written notice to the Reinsurer of the pendency of any claim against the insolvent Company under the Policy within a reasonable time after such claim is filed in the insolvency proceeding; that during the pendency of any such claim the Reinsurer may investigate and interpose, at its own expense, in the proceeding where any such claim is to be adjudicated any defense or defenses which it may deem available to Company or its liquidator or receiver or statutory successor; that the expense thus incurred by the Reinsurer as the assuming insurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to Company solely as a result of the defense undertaken by the Reinsurer as the assuming insurer.

It is further agreed and understood that as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, the reinsurance shall be payable by the Reinsurer to Company or to its liquidator or receiver or statutory successor, except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of Company, or (b) where the Reinsurer with the consent of the direct insured has assumed obligations of Company under the Policy as direct obligations of the Reinsurer to the payees under the Policy and in substitution for the obligations of Company to such payees.

ARTICLE XVI

1. This Agreement shall be governed by and construed according to the laws of the ___COMMONWEALTH OF PENNSYLVANIA___ except to the extent otherwise provided in ARTICLE XI.

2. This Agreement may not be assigned by the Reinsurer unless the written approval of the Company is first obtained.

3. Except for a cancellation in accordance with the provisions of ARTICLE XII, this Agreement may not be released, discharged, changed or modified except by an instrument in writing signed by a duly authorized representative of both of the parties.

4. Any notices, requests or other communications hereunder will be in writing and will be deemed to have been delivered when deposited in the United States mail with proper postage fees prepaid, addressed as follows:

(i) if to Reinsurer, then to
    N. I. LTD.
    C/O J & H LTD
    30 CEDAR AVENUE
    HAMILTON 5, BERMUDA

(ii) if to Company, then to
    INSURANCE COMPANY OF N. AMERICA
    1600 ARCH STREET
    PHILADELPHIA, PENNSYLVANIA 19101

IN WITNESS WHEREOF, the parties, by their duly authorized officers, intending to be legally bound, have signed this Agreement effective the date first written above.

In _____ HAMILTON _____ BERMUDA _____
          (City)                                   XXXXXX                      (State)

as of the __18__ day of __JULY__ 19 82

(NAME OF REINSURER)  N. I. LTD

By _____

Title _____ DIRECTOR _____

Attest _____

In _____ NEW YORK _____ NEW YORK _____
          (City)                                   XXXXXX                      (State)

as of the __18__ day of __JULY__ 19 82

(NAME OF INSURER)  INSURANCE COMPANY OF NORTH AMERICA

By _____

Title _____ Casualty Manager _____

Attest _____

# REINSURANCE AGREEMENT

This Reinsurance Agreement, effective the ___Eighteenth___ day of ___July___, 19 __83__ between XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX corporation and Insurance Company of North America a ___Pennsylvania___ corporation, (which corporation is or all of which corporations are hereinafter called the "Company") and __N. I. Ltd.__, _____, a ___Bermuda___ corporation, having its office and principal place of business at ___C/O J & H Ltd.___, ___Hamilton 5, Bermuda___ (hereinafter called the "Reinsurer"),          30 Cedar Avenue

In consideration of the payment of the reinsurance premium, and subject to the terms, conditions and limits of liability set forth below, the Reinsurer does hereby reinsure the Company in respect of the Company's Policy.

If the Company is constituted of more than one corporation, whose names are set forth above, this Agreement shall apply severally as between the Reinsurer and each such corporation with respect to the policy or policies issued by each such corporation. The rights and obligations provided for herein of any one corporation constituting the Company will not be held, assumed or guaranteed by any other corporation constituting the Company.

## ARTICLE I

For purposes of this Agreement, the following terms shall have these meanings:

1. "Policy"—Company Policy(ies) number(s) __SCG GO 209325, SCA 5875__ and any extension or renewal thereof and endorsement thereto (if more than one policy number is inserted the term "Policy" will mean any one or more of the policies whose numbers are inserted, depending upon the context of its usage).

2. "Incurred Losses"—All Paid Losses, plus case reserves for unpaid losses under the Policy as estimated by the Company.

3. "Paid Losses"—Claims under the Policy paid by the Company; plus all Allocated Claims Expense paid by the Company in connection with the Policy, whether or not related to claims paid.

4. "Allocated Claims Expense"—Such claims expenses that the Company, under its accounting practices, directly allocates to a particular claim. Such expenses include, but are not limited to, attorney's fees for claims in suit, court costs and related costs such as filing fees, and the costs of medical examination, expert medical or other testimony, laboratory services and x-rays, autopsies, stenographic services, witnesses and summonses and copies of documents; but shall not include the salaries and traveling expenses of the Company's employees, the Company's overhead and adjusters' fees.

5. "Occurrence" and "Completed Operations Hazard" and "Products Hazard" will have the meanings given to them in the Policy.

## ARTICLE II

The Reinsurer will be liable to the Company under this Agreement for the following:

1. for each occurrence involving Incurred Losses arising out of the Products Hazard: up to and including $__150,000__ of such Incurred Losses, plus all related Allocated Claims Expense;

2. for each occurrence involving Incurred Losses arising out of Statutory No-Fault Liability: up to and including $__150,000__ of such Incurred Losses, plus all related Allocated Claims Expense;

3. for each occurrence, not arising out of Statutory No-Fault Liability or Products Hazards: up to and including the first $__150,000__ of such Incurred Losses, plus all related Allocated Claims Expense;

for Unallocated Claims Expense in the amount of $ 1,048 for each automobile claim submitted under the Policy in excess of ___15___ claims; and in the amount of $ 221 for each general liability claim submitted under the Policy in excess of ___10___ claims.

## ARTICLE III

1. While the Reinsurer does not undertake to investigate or defend claims or suits under the policy, it shall, where permitted by law, have the right and opportunity to associate, at its own expense, with the Company and its representatives in the defense of any claim, suit or proceeding involving this reinsurance. Except as otherwise specifically provided for herein, the Reinsurer's liability shall follow that of the Company under the Policy. All settlements by the Company of claims involving this reinsurance, when made by the Company, shall be unconditionally binding on the Reinsurer.

2. The Company shall, at the request of the Reinsurer, furnish the Reinsurer a copy of the Policy and all endorsements thereto which in any manner affect this Agreement and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

3. The Company will pay or credit the Reinsurer up to the amount of the Reinsurer's interest for amounts attributable to salvage, reimbursement obtained or recovery made by the Company relating to the Policy, after deducting the actual cost (excluding Company salaries and office expenses) of obtaining such salvage or reimbursement or making such recovery, and after the Company has been reimbursed up to the amount of its interest.

## ARTICLE IV

Except as otherwise provided in ARTICLE VI, any payment the Reinsurer is required to make or any funds the Reinsurer is required to provide under the terms of this Agreement will be payable in the currency of the United States of America and will be paid or provided within ten (10) days from the date the Company sends to the Reinsurer a request for any such payment or funds.

## ARTICLE V

1. The Company will, with funds to be provided by the Reinsurer, establish and maintain a Paid Loss Deposit Fund, the purpose of which is to provide a source of funds for payment of Reinsurer's liability under this Agreement. The initially required level of the Paid Loss Deposit Fund shall be $ 5,000. The Company will have the right to adjust the required level of the Paid Loss Deposit Fund six (6) months after the effective date of this Agreement and quarterly thereafter. The adjusted required level of the Paid Loss Deposit Fund will be a sum which is not greater than the amount of the total Paid Losses for the preceding three (3) months.

2. If, during any calendar month following the effective date of this Agreement, the Company becomes obligated to pay amounts representing the Reinsurer's liability under this Agreement that exceed the then-current initially required or adjusted required level of the Paid Loss Deposit Fund, the Reinsurer shall, within ten (10) calendar days after receipt of a written demand by the Company, forward funds to the Company sufficient to cover such amounts greater than the Paid Loss Deposit Fund balance. The Reinsurer will be credited for the forwarding of such funds (less any interest paid) in a subsequent Reconciliation Statement.

3. If the Reinsurer fails to make any payment to the Company within the time required by this Agreement, the Company will have the option to change the foregoing formula for adjusting the required level of the Paid Loss Deposit Fund by increasing that level to a sum which is not greater than the amount of the total Paid Losses for the preceding semi-annual period.

## ARTICLE VI

1. The consideration for the reinsurance provided hereunder will be a reinsurance premium which shall be the premium received by the Company under the Policy less return premium minus:

   a. ___10.57___% of such premium for Company expenses (excluding retrospective adjustments);

   b. ___4.25___% of such premium for estimated: (i) premium taxes, ~~(ii) XXX~~

   c. ___18.92___% of such premium for Company's insurance charge (excluding retrospective adjustments).

2. As the premium is received by the Company in accordance with the terms and conditions of the Policy, reinsurance premium shall be payable to the Reinsurer within the time specified in ARTICLE VII below. The amounts owed by the parties to each other shall be reconciled as provided in paragraph 3 immediately below.

3. The reinsurance premium payable to the Reinsurer shall be reconciled against the following items to the extent that such items were not previously reconciled under this Agreement:

   a. the amount of the initially required level of the Paid Loss Deposit Fund;

   b. the amount necessary to establish or maintain the adjusted required level of the Paid Loss Deposit Fund; and

   c. that portion of the Reinsurer's liability under ARTICLE II of this Agreement represented by Paid Losses and unallocated claims expense.

## ARTICLE VII

1. Within ten (10) days after each payment of premium is received by the Company in accordance with the terms and conditions of the Policy, the Company will issue to the Reinsurer a Reconciliation Statement reflecting items a, b, and c described in ARTICLE VI, 3 above. If the result of any such reconciliation is that the Reinsurer owes money to the Company, the Reinsurer will pay the amont so owed within the time required by this Agreement. If the result of any such reconciliation is that the Company owes money to the Reinsurer, the Company will pay the amount so owed at the time the Reconciliation Statement is issued.

2. The parties hereto recognize and agree that the Reinsurer's liability hereunder will probably extend beyond the time that the Company is receiving premiums under the Policy, and possibly beyond the expiration date of the Policy and this Agreement; and that in such an event the reconciliations may involve only a computation of the Reinsurer's liability to the Company, if any.

3. Upon termination of the Policy, the earned premium will be computed in accordance with the applicable rules, rates, rating plans, premiums and minimum premiums, and the actual $Tax$ payable by the Company will be established. If the earned premium as finally determined is different from the premium that was utilized to establish the reinsurance premium hereunder, or if the actual $Tax$ payable by the Company is different from the estimated $Tax$ assessed to establish the reinsurance premium hereunder, all prior reconciliations will be recalculated utilizing the actual earned premium or the actual $Tax$ if the recalculation of the reconciliations indicates that the Reinsurer owes money to the Company, the Reinsurer will pay that money within the time required by this Agreement; if the recalculation indicates that the Company owes money to the Reinsurer, the Company will pay that money at the time the recalculation of the prior reconciliation is mailed to the Reinsurer.

## ARTICLE VIII

The Reinsurer shall provide to the Company either an Irrevocable Letter of Credit or other collateral acceptable to the Company in an amount and form acceptable to the Company, for the purpose of securing the obligations of the Reinsurer hereunder. The obligations shall include but not be limited to, actual reserves for losses, unearned premiums and reserves for losses incurred but not reported. The Reinsurer's duty to provide security as aforesaid will extend until the Company is satisfied that the Reinsurer's obligations under this Agreement have been or will be met. The Reinsurer recognizes that this duty may continue after this Agreement terminates or is cancelled.

The Reinsurer will, thirty (30) days prior to any termination or expiration of such Irrevocable Letter of Credit or other collateral, provide to the Company, a substitute Irrevocable Letter of Credit or substitute collateral acceptable to the Company in an amount and form acceptable to the Company which will become effective immediately upon the termination or expiration of the prior Irrevocable Letter of Credit or other collateral. The Reinsurer will likewise continue to provide such substitute Irrevocable Letters of Credit or other collateral acceptable to the Company in an amount and form acceptable to the Company until the Company is satisfied that the Reinsurer's obligations under this Agreement have been or will be met. If the Reinsurer fails to provide the Company with any such substitute Irrevocable Letter of Credit or other collateral the Company will have the right to draw upon the full amount of the existing Irrevocable Letter of Credit or to condemn the existing collateral and to apply such funds to secure the obligations of the Reinsurer hereunder.

The Company will have the right to require that any such substitute Irrevocable Letter of Credit or other collateral be in an amount greater than that of the Irrevocable Letter of Credit or other collateral it is replacing. Reinsurer shall deliver all collateral or replacement collateral to Company at  127 John St., New York, N.Y.

ARTICLE IX

1. The Company will be liable for all taxes on premiums received under the Policy.

2. The Reinsurer will, in addition to its liability under ARTICLE II, be liable for all taxes on reinsurance premiums hereunder.

## ARTICLE X

1. As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two (2) arbitrators and an umpire, meeting in Philadelphia, Pennsylvania, unless otherwise agreed by the Company and the Reinsurer.

2. The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies. Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within sixty (60) days after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four (4) weeks after their nominations, each of them shall name three (3), of whom the other shall decline two (2) and the decision shall be made by drawing lots.

3. The claimant shall submit its initial brief within twenty (20) days from appointment of the umpire. The respondent shall submit its brief within twenty (20) days thereafter and the claimant may submit a reply brief within ten (10) days after filing of the respondent's brief.

4. The board shall make an award with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its award in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. The board shall make its award within sixty (60) days following the termination of the hearings unless the parties consent to an extension. A decision by the majority of the members of the board shall become the award of the board and shall be final and binding upon all parties to the proceeding. Either party may apply to the United States District Court for the Eastern District of Pennsylvania for an order confirming the award; and a judgment of that Court shall thereupon be entered upon the award. If such an order is issued, the attorneys' fees of the party so applying and court costs will be paid by the party against whom confirmation is sought.

5. If more than one (1) reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one (1) party for purposes of this clause and communications shall be made by Company to each of the reinsurers constituting the one (1) party; provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint.

6. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board.

## ARTICLE XI

1. This Agreement may be cancelled in whole or in part by the Company by giving ninety (90) days prior written notice to the Reinsurer. The Reinsurer shall have the right to cancel this Agreement by giving a number of days prior written notice to the Company which shall be not less than thirty (30) days more than the longest prior notice of cancellation required by any Named Insured or Insured under the Policy.

2. In the event the Policy is cancelled, this Agreement shall automatically be cancelled as of the effective date of the cancellation of the Policy.

3. In either such event the Reinsurer will be paid a pro rata portion of the reinsurance premium to which it would have been entitled had this Agreement not been cancelled.

## ARTICLE XII

Reinsurer recognizes that the Company's obligations which accrue during the term of the Policy will survive the termination of the Policy; and the Reinsurer's obligations under this Agreement will correspondingly survive the termination of the Policy and the termination of this Agreement. If this Agreement terminates, the Reinsurer's liability under ARTICLE II hereof will continue with respect to losses incurred prior to the effective date of termination of this Agreement, and the Reinsurer will pay the Company for Paid Losses and unallocated claims expense until there are no more Incurred Losses outstanding.

## ARTICLE XIII

Reinsurer will, in addition to its liability under ARTICLE II, reimburse Company for Company's attorneys' fees and court costs incurred in attempting to collect amounts, including interest, which become owing to Company hereunder, whether prior or subsequent to the termination of the Policy, but which are not paid within the time required by this Agreement. Either party will pay to the other an interest charge at the monthly rate of one and one-half percent (1.5%) on any amount that is not paid within the time required by this Agreement, said charge to commence at the time any such payment is required by this Agreement.

## ARTICLE XIV

Inadvertent delays, errors or omissions made by Company or Reinsurer in connection with this Agreement or any transaction hereunder shall not relieve the other party from any liability which would have attached, had such delay, error or omission not occurred, provided that such error or omission will be rectified as soon as possible after discovery.

## ARTICLE XV

The Reinsurer hereby agrees that, as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, the reinsurance shall be payable by the Reinsurer on the basis of the liability of Company under the Policy without diminution because of the insolvency of Company.

It is further agreed and understood that in the event of insolvency of Company, the liquidator or receiver or statutory successor of Company shall give written notice to the Reinsurer of the pendency of any claim against the insolvent Company under the Policy within a reasonable time after such claim is filed in the insolvency proceeding; that during the pendency of any such claim the Reinsurer may investigate and interpose, at its own expense, in the proceeding where any such claim is to be adjudicated any defense or defenses which it may deem available to Company or its liquidator or receiver or statutory successor; that the expense thus incurred by the Reinsurer as the assuming insurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to Company solely as a result of the defense undertaken by the Reinsurer as the assuming insurer.

It is further agreed and understood that as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, the reinsurance shall be payable by the Reinsurer to Company or to its liquidator or receiver or statutory successor, except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of Company, or (b) where the Reinsurer with the consent of the direct insured has assumed obligations of Company under the Policy as direct obligations of the Reinsurer to the payees under the Policy and in substitution for the obligations of Company to such payees.

## ARTICLE XVI

1. This Agreement shall be governed by and construed according to the laws of the <u>Commonwealth of Pennsylvania</u> except to the extent otherwise provided in ARTICLE XI.

2. This Agreement may not be assigned by the Reinsurer unless the written approval of the Company is first obtained.

3. Except for a cancellation in accordance with the provisions of ARTICLE XII, this Agreement may not be released, discharged, changed or modified except by an instrument in writing signed by a duly authorized representative of both of the parties.

4. Any notices, requests or other communications hereunder will be in writing and will be deemed to have been delivered when deposited in the United States mail with proper postage fees prepaid, addressed as follows:

(i) if to Reinsurer, then to
<u>N. I. Ltd.</u>
<u>C/O J & H Ltd</u>
<u>30 Cedar Avenue Hamilton 5</u>
<u>Bermuda</u>

(ii) if to Company, then to
<u>Insurance Company of N. America</u>
<u>1600 Arch Street</u>
<u>Philadelphia, PA   19101</u>

IN WITNESS WHEREOF, the parties, by their duly authorized officers, intending to be legally bound, have signed this Agreement effective the date first written above.

In __Hamilton__ _____, __Bermuda__ _____ _____
     (City)                  (County)           (State)

as of the __18__ day of __July__ , 19 __83__

(NAME OF REINSURER) __X. I. LTD__

By _____

Title _____

Attest _____

In __NEW YORK__ _____, __NEW YORK__ _____ _____
     (City)                (County)           (State)

as of the __18__ day of __July__ , 19 __83__

(NAME OF INSURER) INSURANCE COMPANY OF NORTH AMERICA

By _____

Title _____

Attest _____

## REINSURANCE AGREEMENT

This Reinsurance Agreement, effective the ___Eighteenth___ day of ___July___, ___1984___, between XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXor XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Insurance Company of North America , a ___Pennsylvania___ corporation, (which corporation is or all of which corporations are hereinafter called the "Company") and ___N.I. Ltd.___ _____, a ___Bermuda___ corporation, having its office and principal place of business at ___C/O J & H Ltd.___, ___Hamilton 5, Bermuda___ (hereinafter called the "Reinsurer").

In consideration of the payment of the reinsurance premium, and subject to the terms, conditions and limits of liability set forth below, the Reinsurer does hereby reinsure the Company in respect of the Company's Policy.

If the Company is constituted of more than one corporation, whose names are set forth above, this Agreement shall apply severally as between the Reinsurer and each such corporation with respect to the policy or policies issued by each such corporation. The rights and obligations provided for herein of any one corporation constituting the Company will not be held, assumed or guaranteed by any other corporation constituting the Company.

### ARTICLE I

For purposes of this Agreement, the following terms shall have these meanings:

1. "Policy"—Company Policy(ies) number(s) ___SCG GO 209325,   SCA 5875___ and any extension or renewal thereof and endorsement thereto (if more than one policy number is inserted the term "Policy" will mean any one or more of the policies whose numbers are inserted, depending upon the context of its usage).

2. "Incurred Losses"—All Paid Losses, plus case reserves for unpaid losses under the Policy as estimated by the Company.

3. "Paid Losses"—Claims under the Policy paid by the Company; plus all Allocated Claims Expense paid by the Company in connection with the Policy, whether or not related to claims paid.

4. "Allocated Claims Expense"—Such claims expenses that the Company, under its accounting practices, directly allocates to a particular claim. Such expenses include, but are not limited to, attorney's fees for claims in suit, court costs and related costs such as filing fees, and the costs of medical examination, expert medical or other testimony, laboratory services and x-rays, autopsies, stenographic services, witnesses and summonses and copies of documents; but shall not include the salaries and traveling expenses of the Company's employees, the Company's overhead and adjusters' fees.

5. "Occurrence" and "Completed Operations Hazard" and "Products Hazard" will have the meanings given to them in the Policy.

### ARTICLE II

The Reinsurer will be liable to the Company under this Agreement for the following:

1. for each occurrence involving Incurred Losses arising out of the Products Hazard: up to and including $ 150,000. of such Incurred Losses, plus all related Allocated Claims Expense;

2. for each occurrence involving Incurred Losses arising out of Statutory No-Fault Liability: up to and including $ 150,000. of such Incurred Losses, plus all related Allocated Claims Expense;

3. for each occurrence, not arising out of Statutory No-Fault Liability or Products Hazards: up to and including the first $ 150,000. of such Incurred Losses, plus all related Allocated Claims Expense;

4. for Unallocated Claims Expense in the amount of $ 109 for each automobile claim submitted under the Policy in excess of 15 claims; and in the amount of $ 232 for each general liability claim submitted under the Policy in excess of 10 claims.

## ARTICLE III

1. While the Reinsurer does not undertake to investigate or defend claims or suits under the policy, it shall, where permitted by law, have the right and opportunity to associate, at its own expense, with the Company and its representatives in the defense of any claim, suit or proceeding involving this reinsurance. Except as otherwise specifically provided for herein, the Reinsurer's liability shall follow that of the Company under the Policy. All settlements by the Company of claims involving this reinsurance, when made by the Company, shall be unconditionally binding on the Reinsurer.

2. The Company shall, at the request of the Reinsurer, furnish the Reinsurer a copy of the Policy and all endorsements thereto which in any manner affect this Agreement and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

3. The Company will pay or credit the Reinsurer up to the amount of the Reinsurer's interest for amounts attributable to salvage, reimbursement obtained or recovery made by the Company relating to the Policy, after deducting the actual cost (excluding Company salaries and office expenses) of obtaining such salvage or reimbursement or making such recovery, and after the Company has been reimbursed up to the amount of its interest.

## ARTICLE IV

Except as otherwise provided in ARTICLE VI, any payment the Reinsurer is required to make or any funds the Reinsurer is required to provide under the terms of this Agreement will be payable in the currency of the United States of America and will be paid or provided within ten (10) days from the date the Company sends to the Reinsurer a request for any such payment or funds.

## ARTICLE V

1. The Company will, with funds to be provided by the Reinsurer, establish and maintain a Paid Loss Deposit Fund, the purpose of which is to provide a source of funds for payment of Reinsurer's liability under this Agreement. The initially required level of the Paid Loss Deposit Fund shall be $ 5,000 The Company will have the right to adjust the required level of the Paid Loss Deposit Fund six (6) months after the effective date of this Agreement and quarterly thereafter. The adjusted required level of the Paid Loss Deposit Fund will be a sum which is not greater than the amount of the total Paid Losses for the preceding three (3) months.

2. If, during any calendar month following the effective date of this Agreement, the Company becomes obligated to pay amounts representing the Reinsurer's liability under this Agreement that exceed the then-current initially required or adjusted required level of the Paid Loss Deposit Fund, the Reinsurer shall, within ten (10) calendar days after receipt of a written demand by the Company, forward funds to the Company sufficient to cover such amounts greater than the Paid Loss Deposit Fund balance. The Reinsurer will be credited for the forwarding of such funds (less any interest paid) in a subsequent Reconciliation Statement.

3. If the Reinsurer fails to make any payment to the Company within the time required by this Agreement, the Company will have the option to change the foregoing formula for adjusting the required level of the Paid Loss Deposit Fund by increasing that level to a sum which is not greater than the amount of the total Paid Losses for the preceding semi-annual period.

## ARTICLE VI

1. The consideration for the reinsurance provided hereunder will be a reinsurance premium which shall be the premium received by the Company under the Policy less return premium minus:

   a. 11.58 % of such premium for Company expenses (excluding retrospective adjustments);

   b. 4.26 % of such premium for estimated: (i) premium taxes, (ii) fees for boards and bureaus and (iii) liabilities for assessments and pools (hereinafter referred to as "TF&L"); and

   c. 22.05 % of such premium for Company's insurance charge (excluding retrospective adjustments).

2. As the premium is received by the Company in accordance with the terms and conditions of the Policy, reinsurance premium shall be payable to the Reinsurer within the time specified in ARTICLE VII below. The amounts owed by the parties to each other shall be reconciled as provided in paragraph 3 immediately below.

3. The reinsurance premium payable to the Reinsurer shall be reconciled against the following items to the extent that such items were not previously reconciled under this Agreement:

   a. the amount of the initially required level of the Paid Loss Deposit Fund;

   b. the amount necessary to establish or maintain the adjusted required level of the Paid Loss Deposit Fund; and

   c. that portion of the Reinsurer's liability under ARTICLE II of this Agreement represented by Paid Losses and unallocated claims expense.

## ARTICLE VII

1. Within ten (10) days after each payment of premium is received by the Company in accordance with the terms and conditions of the Policy, the Company will issue to the Reinsurer a Reconciliation Statement reflecting items a, b, and c described in ARTICLE VI, 3 above. If the result of any such reconciliation is that the Reinsurer owes money to the Company, the Reinsurer will pay the amont so owed within the time required by this Agreement. If the result of any such reconciliation is that the Company owes money to the Reinsurer, the Company will pay the amount so owed at the time the Reconciliation Statement is issued.

2. The parties hereto recognize and agree that the Reinsurer's liability hereunder will probably extend beyond the time that the Company is receiving premiums under the Policy, and possibly beyond the expiration date of the Policy and this Agreement; and that in such an event the reconciliations may involve only a computation of the Reinsurer's liability to the Company, if any.

3. Upon termination of the Policy, the earned premium will be computed in accordance with the applicable rules, rates, rating plans, premiums and minimum premiums, and the actual TF&L payable by the Company will be established. If the earned premium as finally determined is different from the premium that was utilized to establish the reinsurance premium hereunder, or if the actual TF&L payable by the Company is different from the estimated TF&L used to establish the reinsurance premium hereunder, all prior reconciliations will be re-calculated utilizing the actual earned premium or the actual TF&L. If the recalculation of the reconciliations indicates that the Reinsurer owes money to the Company, the Reinsurer will pay that money within the time required by this Agreement; if the recalculation indicates that the Company owes money to the Reinsurer, the Company will pay that money at the time the recalculation of the prior reconciliation is mailed to the Reinsurer.

## ARTICLE VIII

The Reinsurer shall provide to the Company either an Irrevocable Letter of Credit or other collateral acceptable to the Company in an amount and form acceptable to the Company, for the purpose of securing the obligations of the Reinsurer hereunder. The obligations shall include but not be limited to, actual reserves for losses, unearned premiums and reserves for losses incurred but not reported. The Reinsurer's duty to provide security as aforesaid will extend until the Company is satisfied that the Reinsurer's obligations under this Agreement have been or will be met. The Reinsurer recognizes that this duty may continue after this Agreement terminates or is cancelled.

The Reinsurer will, thirty (30) days prior to any termination or expiration of such Irrevocable Letter of Credit or other collateral, provide to the Company, a substitute Irrevocable Letter of Credit or substitute collateral acceptable to the Company in an amount and form acceptable to the Company which will become effective immediately upon the termination or expiration of the prior Irrevocable Letter of Credit or other collateral. The Reinsurer will likewise continue to provide such substitute Irrevocable Letters of Credit or other collateral acceptable to the Company in an amount and form acceptable to the Company until the Company is satisfied that the Reinsurer's obligations under this Agreement have been or will be met. If the Reinsurer fails to provide the Company with any such substitute Irrevocable Letter of Credit or other collateral the Company will have the right to draw upon the full amount of the existing Irrevocable Letter of Credit or to condemn the existing collateral and to apply such funds to secure the obligations of the Reinsurer hereunder.

The Company will have the right to require that any such substitute Irrevocable Letter of Credit or other collateral be in an amount greater than that of the Irrevocable Letter of Credit or other collateral it is replacing. Reinsurer shall deliver all collateral or replacement collateral to Company at _127 John St., New York, NY._

## ARTICLE IX

1. The Company will be liable for all taxes on premiums received under the Policy.

2. The Reinsurer will, in addition to its liability under ARTICLE II, be liable for all taxes on reinsurance premiums hereunder.

## ARTICLE X

1. As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two (2) arbitrators and an umpire, meeting in Philadelphia, Pennsylvania, unless otherwise agreed by the Company and the Reinsurer.

2. The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies. Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within sixty (60) days after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four (4) weeks after their nominations, each of them shall name three (3), of whom the other shall decline two (2) and the decision shall be made by drawing lots.

3. The claimant shall submit its initial brief within twenty (20) days from appointment of the umpire. The respondent shall submit its brief within twenty (20) days thereafter and the claimant may submit a reply brief within ten (10) days after filing of the respondent's brief.

4. The board shall make an award with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its award in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. The board shall make its award within sixty (60) days following the termination of the hearings unless the parties consent to an extension. A decision by the majority of the members of the board shall become the award of the board and shall be final and binding upon all parties to the proceeding. Either party may apply to the United States District Court for the Eastern District of Pennsylvania for an order confirming the award; and a judgment of that Court shall thereupon be entered upon the award. If such an order is issued, the attorneys' fees of the party so applying and court costs will be paid by the party against whom confirmation is sought.

5. If more than one (1) reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one (1) party for purposes of this clause and communications shall be made by Company to each of the reinsurers constituting the one (1) party; provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint.

6. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board.

## ARTICLE XI

1. This Agreement may be cancelled in whole or in part by the Company by giving ninety (90) days prior written notice to the Reinsurer. The Reinsurer shall have the right to cancel this Agreement by giving a number of days prior written notice to the Company which shall be not less than thirty (30) days more than the longest prior notice of cancellation required by any Named Insured or Insured under the Policy.

2. In the event the Policy is cancelled, this Agreement shall automatically be cancelled as of the effective date of the cancellation of the Policy.

3. In either such event the Reinsurer will be paid a pro rata portion of the reinsurance premium to which it would have been entitled had this Agreement not been cancelled.

## ARTICLE XII

Reinsurer recognizes that the Company's obligations which accrue during the term of the Policy will survive the termination of the Policy; and the Reinsurer's obligations under this Agreement will correspondingly survive the termination of the Policy and the termination of this Agreement. If this Agreement terminates, the Reinsurer's liability under ARTICLE II hereof will continue with respect to losses incurred prior to the effective date of termination of this Agreement, and the Reinsurer will pay the Company for Paid Losses and unallocated claims expense until there are no more Incurred Losses outstanding.

## ARTICLE XIII

Reinsurer will, in addition to its liability under ARTICLE II, reimburse Company for Company's attorneys' fees and court costs incurred in attempting to collect amounts, including interest, which become owing to Company hereunder, whether prior or subsequent to the termination of the Policy, but which are not paid within the time required by this Agreement. Either party will pay to the other an interest charge at the monthly rate of one and one-half percent (1.5%) on any amount that is not paid within the time required by this Agreement, said charge to commence at the time any such payment is required by this Agreement.

## ARTICLE XIV

Inadvertent delays, errors or omissions made by Company or Reinsurer in connection with this Agreement or any transaction hereunder shall not relieve the other party from any liability which would have attached, had such delay, error or omission not occurred, provided that such error or omission will be rectified as soon as possible after discovery.

## ARTICLE XV

The Reinsurer hereby agrees that, as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, the reinsurance shall be payable by the Reinsurer on the basis of the liability of Company under the Policy without diminution because of the insolvency of Company.

It is further agreed and understood that in the event of insolvency of Company, the liquidator or receiver or statutory successor of Company shall give written notice to the Reinsurer of the pendency of any claim against the insolvent Company under the Policy within a reasonable time after such claim is filed in the insolvency proceeding; that during the pendency of any such claim the Reinsurer may investigate and interpose, at its own expense, in the proceeding where any such claim is to be adjudicated any defense or defenses which it may deem available to Company or its liquidator or receiver or statutory successor; that the expense thus incurred by the Reinsurer as the assuming insurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to Company solely as a result of the defense undertaken by the Reinsurer as the assuming insurer.

It is further agreed and understood that as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, the reinsurance shall be payable by the Reinsurer to Company or to its liquidator or receiver or statutory successor, except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of Company, or (b) where the Reinsurer with the consent of the direct insured has assumed obligations of Company under the Policy as direct obligations of the Reinsurer to the payees under the Policy and in substitution for the obligations of Company to such payees.

## ARTICLE XVI

1. This Agreement shall be governed by and construed according to the laws of the Commonwealth of Pennsylva: except to the extent otherwise provided in ARTICLE XI.

2. This Agreement may not be assigned by the Reinsurer unless the written approval of the Company is first obtained.

3. Except for a cancellation in accordance with the provisions of ARTICLE XII, this Agreement may not be released, discharged, changed or modified except by an instrument in writing signed by a duly authorized representative of both of the parties.

4. Any notices, requests or other communications hereunder will be in writing and will be deemed to have been delivered when deposited in the United States mail with proper postage fees prepaid, addressed as follows:

(i) if to Reinsurer, then to
N.I. Ltd.
C/O  J & H Ltd.
30 Cedar Avenue  Hamilton 5
Bermuda

(ii) if to Company, then to
Insurance Company of North America
1600 Arch Street.
Philadelphia, Pa. 19101

IN WITNESS WHEREOF, the parties, by their duly authorized officers, intending to be legally bound, have signed this Agreement effective the date first written above.

In _____Hamilton_____Bermuda_____
                  (City)                                                    (County)                                              (State)

as of the ___18___ day of ___July_____, 19 _84_

(NAME OF REINSURER)   N.I. Ltd.

By _____
Title ___ASST. TREASURER_____
Attest _____

In ___New York_____New York_____
                  (City)                                                    (County)                                              (State)

as of the ___18___ day of ___July_____, 19 _84_

(NAME OF INSURER)

By _____
Title ___Branch Casualty Manager_____
Attest _____

EXHIBIT

2

|  |  |
|---|---|
| In the Matter of the Arbitration Between | Before: |
| ·Insurance Company of North America, | James F. Dowd, Umpire |
| Petitioner, | Diane Nergaard, Arbitrator |
| -and- | Andrew Barile, Arbitrator |
| N.I. Limited, | |
| Respondent. | |

## FINAL AWARD

The Panel, having: (i) considered all the pre-hearing briefs, exhibits, authorities and the expert report; (ii) conducted an evidentiary hearing on December 18 and 19, 2007 and (iii) deliberated, unanimously finds and orders as follows:

1.  The allocations with respect to expense and indemnity made by Insurance Company of North America ("INA"), the Petitioner, to its insurance policy #SCG-GO209325 ("Policy") were reasonable and the Respondent is ordered to pay INA $461,782.24 plus interest in satisfaction of the amount due under the three Reinsurance Agreements ("Reinsurance Agreements") which are the subject matter of this arbitration. The Respondent shall pay in accordance with the provisions of paragraph 5 below.

2.  N.I. Limited's request for reimbursement for the letter of credit draw down by INA is denied.

3.  The Petitioner's claim for the expenses it incurred in the declaratory judgment action between the Petitioner and BHP Copper is granted plus interest at the rate (i.e., 1.5% per month) prescribed in the Reinsurance Agreements ("Interest") from the dates on which the amounts were billed by the Petitioner or accrued under the Reinsurance Agreements. The Respondent shall pay in accordance with the provisions of paragraph 5 below.

4.  N.I. Limited shall reimburse INA for all of its attorneys fees and costs incurred in collecting the amounts due to INA under the Policy and the Reinsurance Agreements including, but not limited to, those expenses incurred in the prosecution of this arbitration plus Interest on any amount due but not paid within the time required by the Reinsurance Agreements. The Respondent shall pay in accordance with the provisions of paragraph 5 below.

5.  The Petitioner shall, within 30 days from the date hereof, render an account ("Account") to the Respondent of all amounts due to Petitioner including Interest. The Respondent shall pay such amount within 20 days of the receipt of the Account. The Account shall be in affidavit form signed under oath by a principal financial officer of INA and certified as a true and correct statement of balances which exist between the Petitioner and Respondent arising under the Policy, the Reinsurance Agreements and this Award. The

Account will reflect all amounts referred to in paragraphs 1 to 4 of this Order and any other credits or charges which are attributable to the subject matter of this arbitration.

6. The Parties shall pay, within 30 days from the date hereof, all of the unpaid fees and expenses of the party appointed arbitrators and the umpire in this matter. The Panel members will each render their final bills within 10 days from the date of this Award.

7. (a) The Respondent has raised as a defense in this matter certain releases ("Release Defense") contained in settlement agreements entered into in 1997 and 2002 involving environmentally damaged sites other than Final Creek. The United States District Court for the District of Colorado found, in an Order dated September 20, 2006, those releases not to be effective bars to the reinsurance claims asserted in this arbitration.

(b) In the late stages of this proceeding, after extensive briefing, argument and expense concomitant therewith, the Respondent elected to withdraw the Release Defense from this matter. The Panel has read and adopts the opinion of the United States District Court for the District of Colorado.

(c) The Respondent is foreclosed from asserting the Release Defense in any future arbitration against the Petitioner arising from the Final Creek site which is the subject matter of this arbitration.

8. The Petitioner may use the "Arbitration Information" as that term is defined in the Confidentiality Agreement in this proceeding in any other arbitrations which may be initiated between the Parties hereto arising under the Reinsurance Agreements with respect to the Final Creek site.

9. The Panel will retain jurisdiction in this matter for the sole and limited purpose of resolving any disputes which may arise over the Account rendered by the Petitioner under paragraph 5 above or the amounts ordered paid under paragraph 6 above. In all other respects this is and should be considered to be the Final Award in this matter.

10. All other requests for relief are denied.

So ordered.

_____
James F. Dowd, Umpire
For the Panel                                                December 21, 2007

**EXHIBIT**

**3**

**CONFIDENTIAL**

---------------------------------------------------------------------x

IN THE MATTER OF THE ARBITRATION BETWEEN

INSURANCE COMPANY OF NORTH AMERICA

Petitioner,

       -and-

N.I. LIMITED,

Respondent,

---------------------------------------------------------------------x

Panel Members
James Dowd
Diane Nergaard
Andrew Barile

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | ) | |
| | ) | ss.: |
| County of Philadelphia | ) | |

**JOHN S. EDMONDS**, being duly sworn, deposes and says:

1.    My name is John S. Edmonds, and I am the Senior Vice President of Credit Management for ACE INA and a principal financial officer of that company. If called to testify, I could and would testify to the facts set forth herein.

2.    I submit this affidavit in accordance with paragraph 5 of the Panel's December 21, 2007 Final Award (the "Final Award"). The facts and evidence cited herein represent the amounts due to INA from N.I., Limited ("NIL") pursuant to the Final Award.

3.    Annexed hereto as Exhibit "1" is a true and accurate copy of INA's November 9, 2007 statement of account. I have been advised that this statement of account was submitted in this arbitration as INA's Hearing Exhibit "47." This statement of account evidences that NIL owes INA a total of $491,141.10. I have been further advised that of this amount, NIL owes INA **$461,782.24** for Pinal Creek site claims under the 1982-1985 Reinsurance Agreements.

4.    A true and accurate copy of INA's interest calculation is annexed hereto as Exhibit "2," and evidences that NIL owes INA **$258,701.34** in interest through January 18, 2008. Counsel has advised me that the interest was calculated in accordance with: (a) Article XIII of the Reinsurance Agreements at issue in this arbitration which provides that: "either party will pay the other an interest charge at the monthly rate of one and one-half percent (1.5%) on any amount that is not paid within the time required by this Agreement;" and (b) Article IV of these Reinsurance Agreements which further provides that NIL must pay INA amounts due "within 10 days from the date [INA] sends [NIL] a request for any such payment or funds."

5.    1 have also been advised that interest is calculated: (a) on a compounded basis; (b) through January 18, 2008; and (c) from the 10 days after INA's relevant billing was sent plus INA's customary grace period. Pursuant to counsel's instructions, when determining the interest due, INA began its calculation using the $450,000 indemnity billing (dated June 21, 2005) because this unpaid billing was allocated solely to the 1982-1985 Policy.   For the sake of fairness, INA then computed interest relating to the remaining balance owed by NIL -- $11,782.24 (the $461,782.24 total owed by NIL - the $450,000 of indemnity) -- from the date of INA's last billing (June 29, 2007).   Counsel tells me that the reasoning behind these computations was fully provided at the December 2007 hearing, as well as in INA's pre-hearing briefs.

6.    For each day after January 18, 2007, interest will continue to accrue as set forth in Exhibit "2" under the section entitled "Combined Accrual for Balances Owed."  For any interest that accrues after March 1, 2008 (the last date set forth in the computations), INA will provide updated interest computations to NIL as necessary.

2

7.    INA has incurred $556,893.15 in attorneys' fees and costs "in attempting to collect amounts" due under the Reinsurance Agreements at issue in this arbitration.

8.    The above referenced amounts (and supporting evidence) is a true and accurate statement of balance which is owed by NIL to INA under the Reinsurance Agreements at issue in this arbitration.

9.    Based on the foregoing, NIL should remit a total of $1,277,376.70 to INA within 20 days from the receipt of this affidavit in accordance with the Panel's Final Order.    If this balance is not paid to INA by January 18, 2007, additional interest will continue to accrue as set forth in Exhibit "2" under the section entitled "Combined Accrual for Balances Owed" and should be added to any payment submitted by NIL to INA.   In the event NIL does not make payment by March 1, 2008, additional interest computations will be provided to NIL.

_____
JOHN S. EDMONDS

Sworn to before me this
17th day of January 2008

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
PAMELA L. MARTIN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 1, 2010

3

"1"

ACE-USA / ESIS
SPECIAL RISK FACILITIES
CUSTOMER BILLING SERVICES
1-800-323-6663

**STATEMENT OF ACCOUNT**
Client: Newmont Mining Corp.
Payor: N.I. Limited

PAGE: 1
STATEMENT DATE: 11/09/2007
CLIENT REF. #: 5000012997
TEAM: LSRU

| | Invoice | | | | Transaction | | Transaction | |
| Invoice Number | Date | Description | Amount | Status | Date | Type | Amount Applied | Net |
|---|---|---|---|---|---|---|---|---|
| 0000205525 | 09/09/2002 | Regular | $2,757.09 | PAST DUE | Due Date: 09/24/2002 | | | |
| | | | | | | | | $2,757.09 |
| 0000209565 | 10/08/2002 | Regular | $7,584.92 | PAST DUE | Due Date: 10/23/2002 | | | |
| | | | | | | | | $7,584.92 |
| 0000213888 | 11/08/2002 | Regular | $11,803.60 | PAST DUE | Due Date: 11/25/2002 | | | |
| | | | | | | | | $11,803.60 |
| 0000217756 | 12/09/2002 | Regular | $2,926.71 | PAST DUE | Due Date: 12/23/2002 | | | |
| | | | | | | | | $2,926.71 |
| 0000221670 | 01/08/2003 | Regular | $4,737.45 | PAST DUE | Due Date: 01/23/2003 | | | |
| | | | | | | | | $4,737.45 |
| 0000226368 | 02/10/2003 | Regular | $3,630.93 | PAST DUE | Due Date: 02/25/2003 | | | |
| | | | | | | | | $3,630.93 |
| 0000230439 | 03/10/2003 | Regular | $6,293.42 | PAST DUE | Due Date: 03/25/2003 | | | |
| | | | | | | | | $6,293.42 |
| 0000234794 | 04/08/2003 | Regular | ($37,043.55) | PAST DUE | Due Date: 04/23/2003 | | | |
| | | | | | | | | ($37,043.55) |
| 0000239072 | 05/08/2003 | Regular | $804.01 | PAST DUE | Due Date: 05/23/2003 | | | |
| | | | | | | | | $804.01 |
| 0000247599 | 07/08/2003 | Regular | $3,691.63 | PAST DUE | Due Date: 07/23/2003 | | | |
| | | | | | | | | $3,691.63 |
| 0000252028 | 08/08/2003 | Regular | $3,514.38 | PAST DUE | Due Date: 08/25/2003 | | | |
| | | | | | | | | $3,514.38 |
| 0000260636 | 10/08/2003 | Regular | $552.57 | PAST DUE | Due Date: 10/23/2003 | | | |
| | | | | | | | | $552.57 |
| 0000265382 | 11/10/2003 | Regular | $2,857.16 | PAST DUE | Due Date: 11/25/2003 | | | |
| | | | | | | | | $2,857.16 |
| 0000269358 | 12/08/2003 | Regular | $96.32 | PAST DUE | Due Date: 12/23/2003 | | | |
| | | | | | | | | $96.32 |

CREDIT TERMS:              15 Days
ANNUAL RATE OF INTEREST: 0.00%

TRANSACTIONS AFTER 11/09/2007    WILL APPEAR
ON THE NEXT STATEMENT OF ACCOUNT.

ACE-USA / ESIS
SPECIAL RISK FACILITIES
CUSTOMER BILLING SERVICES
1-800-323-6663

**STATEMENT OF ACCOUNT**
Client: Newmont Mining Corp.
Payor: N.I. Limited

PAGE: 2
STATEMENT DATE: 11/09/2007 (
CLIENT REF. #: 5000012997
TEAM: LSRU

| Invoice | | | | | | | Transactions | |
|---|---|---|---|---|---|---|---|---|
| Invoice Number | Date | Description | Amount | Status | Transaction Date | Type | Amount Applied | Net |
| 0000276608 | 02/09/2004 | Regular | $16,162.47 | PAST DUE | Due Date: 02/24/2004 | | | |
| | | | | | | | | $16,162.47 |
| 0000267838 | 04/08/2004 | Regular | $228.80 | PAST DUE | Due Date: 04/23/2004 | | | |
| | | | | | | | | $228.80 |
| 0000292589 | 05/10/2004 | Regular | $1,295.05 | PAST DUE | Due Date: 05/25/2004 | | | |
| | | | | | | | | $1,295.05 |
| 0000298890 | 06/08/2004 | Regular | $728.75 | PAST DUE | Due Date: 06/23/2004 | | | |
| | | | | | | | | $728.75 |
| 0000305998 | 08/09/2004 | Regular | $5,137.39 | PAST DUE | Due Date: 08/24/2004 | | | |
| | | | | | | | | $5,137.39 |
| 0000310297 | 09/08/2004 | Regular | $978.96 | PAST DUE | Due Date: 09/23/2004 | | | |
| | | | | | | | | $978.96 |
| 0000315019 | 10/08/2004 | Regular | $259.29 | PAST DUE | Due Date: 10/25/2004 | | | |
| | | | | | | | | $259.29 |
| 0000319559 | 11/08/2004 | Regular | $2,595.09 | PAST DUE | Due Date: 11/23/2004 | | | |
| | | | | | | | | $2,595.09 |
| 0000324086 | 12/08/2004 | Regular | $825.85 | PAST DUE | Due Date: 12/23/2004 | | | |
| | | | | | | | | $825.85 |
| 0000328962 | 01/10/2005 | Regular | $3,093.82 | PAST DUE | Due Date: 01/25/2005 | | | |
| | | | | | | | | $3,093.82 |
| 0000333760 | 02/08/2005 | Regular | $1,559.84 | PAST DUE | Due Date: 02/23/2005 | | | |
| | | | | | | | | $1,559.84 |
| 0000338419 | 03/08/2005 | Regular | $14,632.34 | PAST DUE | Due Date: 03/23/2005 | | | |
| | | | | | | | | $14,632.34 |
| 0000348412 | 05/09/2005 | Regular | $1,773.58 | PAST DUE | Due Date: 05/24/2005 | | | |
| | | | | | | | | $1,773.58 |
| 0000353080 | 06/08/2005 | Regular | $2,357.99 | PAST DUE | Due Date: 06/23/2005 | | | |
| | | | | | | | | $2,357.99 |

CREDIT TERMS:                    15 Days
ANNUAL RATE OF INTEREST: 0.00%

TRANSACTIONS AFTER 11/09/2007    WILL APPEAR
ON THE NEXT STATEMENT OF ACCOUNT.

ACE-USA / ESIS
SPECIAL RISK FACILITIES
CUSTOMER BILLING SERVICES
1-800-323-6663

**STATEMENT OF ACCOUNT**
Client: Newmont Mining Corp.
Payor: N.I. Limited

PAGE: 3
STATEMENT DATE: 11/09/2007
CLIENT REF. #: 5000012997
TEAM: L8RU

| Invoice | | | | | Transaction | | | |
| Invoice Number | Date | Description | Amount | Status | Transaction Date | Type | Amount Applied | Net |
|---|---|---|---|---|---|---|---|---|
| 0000354757 | 06/21/2005 | Large Loss | $450,000.00 | PAST DUE | Due Date: 07/06/2005 | | | |
| | | | | | | | | $450,000.00 |
| 0000358017 | 07/08/2005 | Regular | $1,824.08 | PAST DUE | Due Date: 07/25/2005 | | | |
| | | | | | | | | $1,824.08 |
| 0000362864 | 08/08/2005 | Regular | $1,058.35 | PAST DUE | Due Date: 08/23/2005 | | | |
| | | | | | | | | $1,058.35 |
| 0000367647 | 09/08/2005 | Regular | $585.04 | PAST DUE | Due Date: 09/23/2005 | | | |
| | | | | | | | | $585.04 |
| 0000372709 | 10/10/2005 | Regular | $766.55 | PAST DUE | Due Date: 10/25/2005 | | | |
| | | | | | | | | $766.55 |
| 0000377409 | 11/08/2005 | Regular | $250.12 | PAST DUE | Due Date: 11/23/2005 | | | |
| | | | | | | | | $250.12 |
| 0000382016 | 12/08/2005 | Regular | $296.37 | PAST DUE | Due Date: 12/22/2005 | | | |
| | | | | | | | | $296.37 |
| 0000386882 | 01/09/2006 | Regular | $1,163.87 | PAST DUE | Due Date: 01/24/2006 | | | |
| | | | | | | | | $1,163.87 |
| 0000391839 | 02/08/2006 | Regular | $3,074.24 | PAST DUE | Due Date: 02/23/2006 | | | |
| | | | | | | | | $3,074.24 |
| 0000396609 | 03/08/2006 | Regular | $883.36 | PAST DUE | Due Date: 03/23/2006 | | | |
| | | | | | | | | $883.36 |
| 0000401941 | 04/10/2006 | Regular | $1,965.34 | PAST DUE | Due Date: 04/25/2006 | | | |
| | | | | | | | | $1,965.34 |
| 0000406568 | 05/08/2006 | Regular | $296.00 | PAST DUE | Due Date: 05/23/2006 | | | |
| | | | | | | | | $296.00 |
| 0000411407 | 06/08/2006 | Regular | $1,008.45 | PAST DUE | Due Date: 06/23/2006 | | | |
| | | | | | | | | $1,008.45 |
| 0000416419 | 07/10/2006 | Regular | $425.84 | PAST DUE | Due Date: 07/25/2006 | | | |
| | | | | | | | | $425.84 |

CREDIT TERMS:          15 Days
ANNUAL RATE OF INTEREST: 0.00%

TRANSACTIONS AFTER 11/09/2007    WILL APPEAR
ON THE NEXT STATEMENT OF ACCOUNT.

ACE-USA / ESIS
SPECIAL RISK FACILITIES
CUSTOMER BILLING SERVICES
1-800-323-8663

**STATEMENT OF ACCOUNT**
Client: Newmont Mining Corp.
Payor: N.I. Limited

PAGE: 4
STATEMENT DATE: 11/09/2007 (
CLIENT REF. #: 5000012997
TEAM: LSRU

| Invoice Number | Date | Description | Amount | Status | Transaction Date | Type | Amount Applied | Net |
|---|---|---|---|---|---|---|---|---|
| 0000421056 | 08/08/2006 | Regular | $185.78 | PAST DUE | Due Date: 08/23/2006 | | | |
| | | | | | | | | $185.78 |
| 0000425780 | 09/08/2006 | Regular | $83.25 | PAST DUE | Due Date: 09/25/2006 | | | |
| | | | | | | | | $83.25 |
| 0000430775 | 10/09/2006 | Regular | $120.44 | PAST DUE | Due Date: 10/24/2006 | | | |
| | | | | | | | | $120.44 |
| 0000435654 | 11/08/2006 | Regular | $269.03 | PAST DUE | Due Date: 11/22/2006 | | | |
| | | | | | | | | $269.03 |
| 0000440305 | 12/08/2006 | Regular | $1,177.37 | PAST DUE | Due Date: 12/22/2006 | | | |
| | | | | | | | | $1,177.37 |
| 0000445067 | 01/08/2007 | Regular | $440.69 | PAST DUE | Due Date: 01/23/2007 | | | |
| | | | | | | | | $440.69 |
| 0000450165 | 02/08/2007 | Regular | $379.45 | PAST DUE | Due Date: 02/23/2007 | | | |
| | | | | | | | | $379.45 |
| 0000454729 | 03/08/2007 | Regular | $315.09 | PAST DUE | Due Date: 03/23/2007 | | | |
| | | | | | | | | $315.09 |
| 0000464669 | 05/08/2007 | Regular | ($106,876.41) | PAST DUE | Due Date: 05/23/2007 | | | |
| | | | | | | | | ($106,876.41) |
| 0000467682 | 05/31/2007 | Regular | $23,193.68 | PAST DUE | Due Date: 06/15/2007 | | | |
| | | | | | | | | $23,193.68 |

CREDIT TERMS:          15 Days
ANNUAL RATE OF INTEREST; 0.00%

TRANSACTIONS AFTER 11/09/2007     WILL APPEAR
ON THE NEXT STATEMENT OF ACCOUNT.

ACE-USA / ESIS
SPECIAL RISK FACILITIES
CUSTOMER BILLING SERVICES
1-800-323-5663

STATEMENT OF ACCOUNT
Client: Newmont Mining Corp.
Payor: N.L Limited

PAGE: 5
STATEMENT DATE: 11/09/2007
CLIENT REF. #: 5000012997
TEAM: LSRU

| Invoice | | | | Transactions | | | |
|---|---|---|---|---|---|---|---|
| Invoice Number | Date | Description | Amount | Status | Transaction Date | Type | Amount Applied | Net |
| 0000472217 | 06/29/2007 | Regular | $42,603.26 | PAST DUE | Due Date: 07/19/2007 | | | |
| | | | | | | | | $42,603.26 |

| | | | | |
|---|---|---|---|---|
| TOTAL INVOICED | $491,141.10 | TOTAL APPLIED | $0.00 | |
| | | TOTAL NET | | $491,141.10 |

STATEMENT OF ACCOUNT SUMMARY

| | | UNALLOCATED CASH RECEIPTS |
|---|---|---|
| TOTAL INVOICED AMOUNTS | 491,141.10 | |
| TOTAL AMOUNT APPLIED | 0.00 | |
| TOTAL NET BALANCE | 491,141.10 | |
| UNALLOCATED CASH RECEIPTS | 0.00 | |
| ACCOUNT BALANCE | 491,141.10 | |

CREDIT TERMS:          15 Days
ANNUAL RATE OF INTEREST: 0.00%

TRANSACTIONS AFTER 11/09/2007   WILL APPEAR
ON THE NEXT STATEMENT OF ACCOUNT.

"2"

**Newmont Mining (N.I. Limited)**
**Interest Calculation**

| Invoice Date | Invoice Amount | Date Due | Months over due As of 1-18-2008. | Calculated Interest | Net Amount due |
|---|---|---|---|---|---|
| 06/21/05 | 450,000.00 | 07/06/05 | 30.40 | 257,587.57 | 707,587.57 |
| 06/29/07 | 11,782.24 | 07/16/07 | 6.07 | 1,113.76 | 12,896.00 |
| **TOTALS** | **461,782.24** | | | **258,701.34** | **720,483.58** |

**Daily Accrual for $450,000 Invoice**

| Date | Invoice Amount | Date Due | Months over due | Calculated Interest | Net Amount due | Daily Accrual |
|---|---|---|---|---|---|---|
| 01/18/08 | 450,000.00 | 07/06/05 | 30.40 | 257,587.57 | 707,587.57 | |
| 01/19/08 | 450,000.00 | 07/06/05 | 30.43 | 257,938.83 | 707,938.83 | 351.25 |
| 01/20/08 | 450,000.00 | 07/06/05 | 30.47 | 258,290.26 | 708,290.26 | 351.43 |
| 01/21/08 | 450,000.00 | 07/06/05 | 30.50 | 258,641.86 | 708,641.86 | 351.60 |
| 01/22/08 | 450,000.00 | 07/06/05 | 30.53 | 258,993.64 | 708,993.64 | 351.78 |
| 01/23/08 | 450,000.00 | 07/06/05 | 30.57 | 259,345.59 | 709,345.59 | 351.95 |
| 01/24/08 | 450,000.00 | 07/06/05 | 30.60 | 259,697.71 | 709,697.71 | 352.13 |
| 01/25/08 | 450,000.00 | 07/06/05 | 30.63 | 260,050.02 | 710,050.02 | 352.30 |
| 01/26/08 | 450,000.00 | 07/06/05 | 30.67 | 260,402.49 | 710,402.49 | 352.48 |
| 01/27/08 | 450,000.00 | 07/06/05 | 30.70 | 260,755.14 | 710,755.14 | 352.65 |
| 01/28/08 | 450,000.00 | 07/06/05 | 30.73 | 261,107.97 | 711,107.97 | 352.83 |
| 01/29/08 | 450,000.00 | 07/06/05 | 30.77 | 261,460.97 | 711,460.97 | 353.00 |
| 01/30/08 | 450,000.00 | 07/06/05 | 30.80 | 261,814.15 | 711,814.15 | 353.18 |
| 01/31/08 | 450,000.00 | 07/06/05 | 30.83 | 262,167.50 | 712,167.50 | 353.35 |
| 02/01/08 | 450,000.00 | 07/06/05 | 30.87 | 262,521.03 | 712,521.03 | 353.53 |
| 02/02/08 | 450,000.00 | 07/06/05 | 30.90 | 262,874.73 | 712,874.73 | 353.70 |
| 02/03/08 | 450,000.00 | 07/06/05 | 30.93 | 263,228.61 | 713,228.61 | 353.88 |
| 02/04/08 | 450,000.00 | 07/06/05 | 30.97 | 263,582.66 | 713,582.66 | 354.05 |
| 02/05/08 | 450,000.00 | 07/06/05 | 31.00 | 263,936.89 | 713,936.89 | 354.23 |
| 02/06/08 | 450,000.00 | 07/06/05 | 31.03 | 264,291.30 | 714,291.30 | 354.41 |
| 02/07/08 | 450,000.00 | 07/06/05 | 31.07 | 264,645.88 | 714,645.88 | 354.58 |
| 02/08/08 | 450,000.00 | 07/06/05 | 31.10 | 265,000.64 | 715,000.64 | 354.76 |
| 02/09/08 | 450,000.00 | 07/06/05 | 31.13 | 265,355.57 | 715,355.57 | 354.93 |
| 02/10/08 | 450,000.00 | 07/06/05 | 31.17 | 265,710.68 | 715,710.68 | 355.11 |
| 02/11/08 | 450,000.00 | 07/06/05 | 31.20 | 266,065.96 | 716,065.96 | 355.29 |
| 02/12/08 | 450,000.00 | 07/06/05 | 31.23 | 266,421.43 | 716,421.43 | 355.46 |
| 02/13/08 | 450,000.00 | 07/06/05 | 31.27 | 266,777.07 | 716,777.07 | 355.64 |
| 02/14/08 | 450,000.00 | 07/06/05 | 31.30 | 267,132.88 | 717,132.88 | 355.82 |
| 02/15/08 | 450,000.00 | 07/06/05 | 31.33 | 267,488.87 | 717,488.87 | 355.99 |
| 02/16/08 | 450,000.00 | 07/06/05 | 31.37 | 267,845.04 | 717,845.04 | 356.17 |
| 02/17/08 | 450,000.00 | 07/06/05 | 31.40 | 268,201.39 | 718,201.39 | 356.35 |
| 02/18/08 | 450,000.00 | 07/06/05 | 31.43 | 268,557.91 | 718,557.91 | 356.52 |
| 02/19/08 | 450,000.00 | 07/06/05 | 31.47 | 268,914.61 | 718,914.61 | 356.70 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 02/20/08 | 450,000.00 | 07/06/05 | 31.50 | 269,271.49 | 719,271.49 | 356.88 |
| 02/21/08 | 450,000.00 | 07/06/05 | 31.53 | 269,628.54 | 719,628.54 | 357.05 |
| 02/22/08 | 450,000.00 | 07/06/05 | 31.57 | 269,985.77 | 719,985.77 | 357.23 |
| 02/23/08 | 450,000.00 | 07/06/05 | 31.60 | 270,343.18 | 720,343.18 | 357.41 |
| 02/24/08 | 450,000.00 | 07/06/05 | 31.63 | 270,700.77 | 720,700.77 | 357.59 |
| 02/25/08 | 450,000.00 | 07/06/05 | 31.67 | 271,058.53 | 721,058.53 | 357.76 |
| 02/26/08 | 450,000.00 | 07/06/05 | 31.70 | 271,416.47 | 721,416.47 | 357.94 |
| 02/27/08 | 450,000.00 | 07/06/05 | 31.73 | 271,774.59 | 721,774.59 | 358.12 |
| 02/28/08 | 450,000.00 | 07/06/05 | 31.77 | 272,132.88 | 722,132.88 | 358.30 |
| 02/29/08 | 450,000.00 | 07/06/05 | 31.80 | 272,491.36 | 722,491.36 | 358.47 |
| 03/01/08 | 450,000.00 | 07/06/05 | 31.83 | 272,850.01 | 722,850.01 | 358.65 |

**Daily Accrual for $11,782.24 balance owed**

| Date | Invoice Amount | Date Due | Months over due | Calculated Interest | Net Amount due | Daily Accrual |
|---|---|---|---|---|---|---|
| 01/18/08 | 11,782.24 | 07/16/07 | 6.07 | 1,113.76 | 12,896.00 | |
| 01/19/08 | 11,782.24 | 07/16/07 | 6.10 | 1,120.17 | 12,902.41 | 6.40 |
| 01/20/08 | 11,782.24 | 07/16/07 | 6.13 | 1,126.57 | 12,908.81 | 6.40 |
| 01/21/08 | 11,782.24 | 07/16/07 | 6.17 | 1,132.98 | 12,915.22 | 6.41 |
| 01/22/08 | 11,782.24 | 07/16/07 | 6.20 | 1,139.39 | 12,921.63 | 6.41 |
| 01/23/08 | 11,782.24 | 07/16/07 | 6.23 | 1,145.81 | 12,928.05 | 6.41 |
| 01/24/08 | 11,782.24 | 07/16/07 | 6.27 | 1,152.22 | 12,934.46 | 6.42 |
| 01/25/08 | 11,782.24 | 07/16/07 | 6.30 | 1,158.64 | 12,940.88 | 6.42 |
| 01/26/08 | 11,782.24 | 07/16/07 | 6.33 | 1,165.07 | 12,947.31 | 6.42 |
| 01/27/08 | 11,782.24 | 07/16/07 | 6.37 | 1,171.49 | 12,953.73 | 6.43 |
| 01/28/08 | 11,782.24 | 07/16/07 | 6.40 | 1,177.93 | 12,960.17 | 6.43 |
| 01/29/08 | 11,782.24 | 07/16/07 | 6.43 | 1,184.36 | 12,966.60 | 6.43 |
| 01/30/08 | 11,782.24 | 07/16/07 | 6.47 | 1,190.80 | 12,973.04 | 6.44 |
| 01/31/08 | 11,782.24 | 07/16/07 | 6.50 | 1,197.24 | 12,979.48 | 6.44 |
| 02/01/08 | 11,782.24 | 07/16/07 | 6.53 | 1,203.68 | 12,985.92 | 6.44 |
| 02/02/08 | 11,782.24 | 07/16/07 | 6.57 | 1,210.12 | 12,992.36 | 6.45 |
| 02/03/08 | 11,782.24 | 07/16/07 | 6.60 | 1,216.57 | 12,998.81 | 6.45 |
| 02/04/08 | 11,782.24 | 07/16/07 | 6.63 | 1,223.03 | 13,005.27 | 6.45 |
| 02/05/08 | 11,782.24 | 07/16/07 | 6.67 | 1,229.48 | 13,011.72 | 6.46 |
| 02/06/08 | 11,782.24 | 07/16/07 | 6.70 | 1,235.94 | 13,018.18 | 6.46 |
| 02/07/08 | 11,782.24 | 07/16/07 | 6.73 | 1,242.40 | 13,024.64 | 6.46 |
| 02/08/08 | 11,782.24 | 07/16/07 | 6.77 | 1,248.87 | 13,031.11 | 6.47 |
| 02/09/08 | 11,782.24 | 07/16/07 | 6.80 | 1,255.34 | 13,037.58 | 6.47 |
| 02/10/08 | 11,782.24 | 07/16/07 | 6.83 | 1,261.81 | 13,044.05 | 6.47 |
| 02/11/08 | 11,782.24 | 07/16/07 | 6.87 | 1,268.29 | 13,050.53 | 6.48 |
| 02/12/08 | 11,782.24 | 07/16/07 | 6.90 | 1,274.76 | 13,057.00 | 6.48 |
| 02/13/08 | 11,782.24 | 07/16/07 | 6.93 | 1,281.25 | 13,063.49 | 6.48 |
| 02/14/08 | 11,782.24 | 07/16/07 | 6.97 | 1,287.73 | 13,069.97 | 6.48 |
| 02/15/08 | 11,782.24 | 07/16/07 | 7.00 | 1,294.22 | 13,076.46 | 6.49 |
| 02/16/08 | 11,782.24 | 07/16/07 | 7.03 | 1,300.71 | 13,082.95 | 6.49 |
| 02/17/08 | 11,782.24 | 07/16/07 | 7.07 | 1,307.20 | 13,089.44 | 6.49 |
| 02/18/08 | 11,782.24 | 07/16/07 | 7.10 | 1,313.70 | 13,095.94 | 6.50 |
| 02/19/08 | 11,782.24 | 07/16/07 | 7.13 | 1,320.20 | 13,102.44 | 6.50 |
| 02/20/08 | 11,782.24 | 07/16/07 | 7.17 | 1,326.71 | 13,108.95 | 6.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 02/21/08 | 11,782.24 | 07/16/07 | 7.20 | 1,333.22 | 13,115.46 | 6.51 |
| 02/22/08 | 11,782.24 | 07/16/07 | 7.23 | 1,339.73 | 13,121.97 | 6.51 |
| 02/23/08 | 11,782.24 | 07/16/07 | 7.27 | 1,346.24 | 13,128.48 | 6.51 |
| 02/24/08 | 11,782.24 | 07/16/07 | 7.30 | 1,352.76 | 13,135.00 | 6.52 |
| 02/25/08 | 11,782.24 | 07/16/07 | 7.33 | 1,359.28 | 13,141.52 | 6.52 |
| 02/26/08 | 11,782.24 | 07/16/07 | 7.37 | 1,365.80 | 13,148.04 | 6.52 |
| 02/27/08 | 11,782.24 | 07/16/07 | 7.40 | 1,372.33 | 13,154.57 | 6.53 |
| 02/28/08 | 11,782.24 | 07/16/07 | 7.43 | 1,378.86 | 13,161.10 | 6.53 |
| 02/29/08 | 11,782.24 | 07/16/07 | 7.47 | 1,385.39 | 13,167.63 | 6.53 |
| 03/01/08 | 11,782.24 | 07/06/05 | 7.50 | 1,391.93 | 13,174.17 | 6.54 |

## Combined Accrual for Balances Owed

| Date | Combined Accrual |
|---|---|
| 01/19/08 | 357.66 |
| 01/20/08 | 357.83 |
| 01/21/08 | 358.01 |
| 01/22/08 | 358.19 |
| 01/23/08 | 358.37 |
| 01/24/08 | 358.54 |
| 01/25/08 | 358.72 |
| 01/26/08 | 358.90 |
| 01/27/08 | 359.08 |
| 01/28/08 | 359.26 |
| 01/29/08 | 359.43 |
| 01/30/08 | 359.61 |
| 01/31/08 | 359.79 |
| 02/01/08 | 359.97 |
| 02/02/08 | 360.15 |
| 02/03/08 | 360.33 |
| 02/04/08 | 360.51 |
| 02/05/08 | 360.69 |
| 02/06/08 | 360.86 |
| 02/07/08 | 361.04 |
| 02/08/08 | 361.22 |
| 02/09/08 | 361.40 |
| 02/10/08 | 361.58 |
| 02/11/08 | 361.76 |
| 02/12/08 | 361.94 |
| 02/13/08 | 362.12 |
| 02/14/08 | 362.30 |
| 02/15/08 | 362.48 |
| 02/16/08 | 362.66 |
| 02/17/08 | 362.84 |
| 02/18/08 | 363.02 |
| 02/19/08 | 363.20 |
| 02/20/08 | 363.38 |
| 02/21/08 | 363.56 |
| 02/22/08 | 363.74 |
| 02/23/08 | 363.92 |
| 02/24/08 | 364.10 |

| | |
|---|---|
| 02/25/08 | 364.28 |
| 02/26/08 | 364.46 |
| 02/27/08 | 364.65 |
| 02/28/08 | 364.83 |
| 02/29/08 | 365.01 |
| 03/01/08 | 365.19 |